## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| IN RE: | § | Chapter 11, subchapter V |
| | § | |
| | § | |
| MARS COLONY, LLC | § | CASE NO. 22-10109-tmd |
| | § | |
| MERIDIAN HIVE, LLC | § | CLOSED CASE No. 22-10140-tmd |
| | § | |
| | § | CHAPTER 11 |
| | § | Substantively Consolidated Under |
| | § | Case No. 22-10109-tmd11 |

### DEBTOR'S SUBCHAPTER V PLAN OF REORGANIZATION

DATED:  July 8, 2022

Todd Headden
HAYWARD PLLC
State Bar No. 24096285
901 Mopac Expressway South
Building 1, Suite 300
Austin, Texas 78746
737.881.7100 (Phone/Fax)
Email:  theadden@haywardfirm.com

Attorneys for Mars Colony, LLC

## Article 1
## Definitions and Use of Terms

**1.01** **Defined Terms**. Unless the context otherwise requires, capitalized terms shall have the meanings set forth in this Section 1.01.

  (a) **Administrative Expense Claim** means an administrative expense or Claim described in 11 U.S.C. § 503, that arose on or after February 23, 2022 in the Bankruptcy Cases and that is entitled to administrative priority under to 11 U.S.C. § 507(a)(1), including but not limited to Claims for compensation of professionals made pursuant to 11 U.S.C. §§ 330 and 331, and all fees and charges assessed against the Debtor and the Debtor's property under 28 U.S.C. § 1930.
  (b) **Allowed Claim** means either: (i) a Claim against the Debtor or its property that is allowable under the Bankruptcy Code to the extent that a proof of claim, proof of interest, or request for payment was timely filed or, with leave of the Bankruptcy Court, was late filed and as to which no objection has been filed or, if an objection has been filed, is allowed by a Final Order, unless otherwise provided in this Plan, or (ii) a Claim against the Debtor or its property that is scheduled and not listed as disputed, contingent or unliquidated, and as to which Claim no objection has been filed or, if an objection is filed, is allowed by a Final Order.
  (c) **Bankruptcy Cases** means the above-captioned Chapter 11 case pending in this Bankruptcy Court.
  (d) **Bankruptcy Code** means the United States Bankruptcy Code, 11 U.S.C. § 101 *et seq.*
  (e) **Bankruptcy Court** means the United States Bankruptcy Court for the Western District of Texas, Austin Division, or such other Court that may have jurisdiction with respect to Debtor'' Bankruptcy Case.
  (f) **Bankruptcy Rules** means the Federal Rules of Bankruptcy Procedure, as amended, promulgated under 28 U.S.C. § 2075, and the Local Rules of the Bankruptcy Court, as applicable from time to time to the Debtor's Bankruptcy Cases.
  (g) **Bar Date** means the dates subsequent to which proof of a pre-petition Claim against the Debtor may not timely be filed or, with respect to proofs of claims held by governmental agencies, the dates by which those must be filed. The Bar Date for government agencies' Claims is August 22, 2022 and the Bar Date for all other Claims is May 4, 2022.
  (h) **Claim** means (i) any right to payment from the Debtor, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or (ii) any right to an equitable remedy for breach of performance if such breach gives rise to a right of payment from the Debtor, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.
  (i) **Claimant** means any Person or entity having or asserting a Claim in any or all of the Bankruptcy Cases.
  (j) **Class** or **Classes** mean all of the holders of Claims or Equity Interests that the Debtor has designated pursuant to 11 U.S.C. § 1123(a)(1) as having substantially similar characteristics as described in Articles VI and VII of this Plan.

**(k) Confirmation** means the entry by the Bankruptcy Court of the Confirmation Order.

**(l) Confirmation Date** means the date on which the Confirmation Order is entered.

**(m) Confirmation Order** means the order of the Bankruptcy Court confirming the Plan pursuant to 11 U.S.C. § 1191.

**(n) Contested Claim** means a Claim against the Debtor or its property that either (a) is listed in the respective Debtor's schedules of assets and liabilities as disputed, contingent or unliquidated; (b) is the subject of a pending action in a forum other than the Bankruptcy Court, unless such Claim has been determined by Final Order in such other forum and Allowed by Final Order of the Bankruptcy Court; or (c) has had or is subject to a pending objection or request for estimation filed by the Debtor or by any other party in interest in accordance with the Bankruptcy Code and the Bankruptcy Rules.

**(o) Creditor** shall have the meaning specified by 11 U.S.C. § 101(9) of the Bankruptcy Code.

**(p) Debtor** means Mars Colony, LLC, and incorporates the substantively consolidated debtor of Meridian Hive, LLC pursuant to the order substantively consolidating the cases. (Docket No. 36). Debtor and Meridian Hive are both a Texas limited liability companies, Debtor continues to serve as a debtor in possession in the Bankruptcy Case.

**(q) Effective Date** means the fifteenth day after the Confirmation Order becomes a Final Order.

**(r) Estate** means the estate of the Debtor created pursuant to 11 U.S.C. § 541.

**(s) Equity Interests** means the interest of the Members of Mars Colony, LLC, and all rights associated therewith, and all Claims arising from or relating to such Equity Interests, including but not limited to Claims for rescission.

**(t) Final Order** means an order or judgment entered by the Bankruptcy Court or any other court exercising jurisdiction over the subject matter and the parties, as to which the time to appeal (generally, fourteen days after entry) has expired and as to which a stay pending appeal has not been granted.

**(u) General Unsecured Claim** means an Unsecured Claim that is not entitled to priority under 11 U.S.C. § 507(a).

**(v) Insider** has the meaning in § 101(31) of the Code. Insiders of the Debtor include, but are not necessarily limited to, W. Cayce Rivers and Kevin Lysaght.

**(w) Lien** shall mean a contractual or statutory lien against or security interest in any Property of the Estate.

**(x) Person** means an individual, partnership, or corporation, but does not include a governmental unit unless the government unit acquires an asset as a result of operation of a loan guarantee agreement, or as receiver or liquidating agent, in which case such governmental unit shall be considered a Person for purposes of 11 U.S.C. § 1102.

**(y) Petition Date** means February 23, 2022 and is the date on which the Debtor filed its petition for relief, commencing the Bankruptcy Case.

**(z) Plan** means this Subchapter V Plan of Reorganization dated July 8, 2022, as it may be amended, modified or supplemented by the Debtor from time to time as permitted herein and by the Bankruptcy Court.

**(aa) Priority Creditor** means a Creditor whose Claim is entitled to priority under 11 U.S.C. § 507.

**(bb)** **Property of the Estate** means all property in which the Debtor holds a legal or an equitable interest, including all property described in 11 U.S.C. § 541.

**(cc)** **Ordinary Course Professionals** means professionals hired by the Debtor pursuant to Court Order, including Cloudbooks, LLC and Terrazas PLLC.

**(dd)** **Reorganized Debtor** refers to the new entities that emerge following Confirmation of the Plan, which shall be entities with the same names as previously.

**(ee)** **Secured Claim** means any Claim secured by a Lien or other charge or interest in property in which the Debtor have an interest, to the extent of the value thereof as determined in accordance with 11 U.S.C. § 506(a).

**(ff)** **Secured Creditor** or **Secured Claimant** means any Claimant holding a Secured Claim.

**(gg)** **Unsecured Claim** means a Claim that is not a Secured Claim.

**(hh)** **Unsecured Creditor** or **Unsecured Claimant** means any Claimant holding an Unsecured Claim.

**1.02 Terms Defined in the Bankruptcy Code**. Capitalized terms not specifically defined in Section 1.01 of the Plan shall have the definitions, if any, given those terms in the Bankruptcy Code.

<u>**Article 2**</u>
**Background and Summary for Debtor's Bankruptcy Case**

**A. Description and History of Debtor's Business**

2.01  Mars Colony, LLC ("<u>Mars Colony</u>" or "<u>Debtor</u>") is an Austin-based winery under the label of Meridian Hive, specifically producing a variety of mead-based products. Meridian Hive, LLC, whose case was substantively consolidated with Mars Colony, formed in 2012 as a Texas Limited Liability Company and was the original entity.

2.02  In 2015, Meridian Hive was facing difficult financial circumstances and required new investment or face bankruptcy. To draw in new investment, the Managing Members of Meridian Hive formed Mars Colony in 2016 as a Texas Limited Liability Company. In August, 2016 the companies filed paperwork with the Texas Secretary of State to effectuate a merger of the two. As part of the merger, Meridian Hive's class A Shareholders took ownership interest in Mars Colony, which in turn owns 100% of the membership interest of Meridian Hive.[1] Both entities survived the merger and the assets and liabilities of Meridian Hive were incorporated into Mars Colony which proceeded to present itself as Meridian Hive Meadery or Meridian Hive.

---

1 This arrangement was challenged by an initial equity owner, Mr. Evan Whitehead and included in the lawsuit titled *Evan Whitehead v. Eric E. Lowe, Michael Simmons, William Cayce Rivers, Mars Colony, LLC, and Meridian Hive, LLC.* In the 459th District Court for Travis County, Cause No. D-1-GN-19-001880. Mr. Whitehead prevailed in his lawsuit, the Mars Colony and Meridian Hive have appealed the ruling.

2.03    Despite the remaining legal distinction, the two functioned in a singular fashion. Operations continued under Mars Colony at 8120 Exchange Dr., Ste. 400 Austin, TX 78754 until shortly before filing bankruptcy. Since the merger, Mars Colony has actively run all operations and presented itself as "Mars Colony, LLC (dba Meridian Hive)".

2.04    Heading into Covid, Mars Colony employed up to 13 employees and produced almost 2,000 barrels of product. Along with many similarly situated business, Mars Colony faced disruptions through the pandemic and were forced to close our tasting room. Despite those disruptions, Mars Colony topped $1,000,000 in gross sales in 2020 by leveraging our strong retail presence in the Texas market. Although the product is mead, or honey wine, the main product line comes in cans and offers a refreshing alternative to beer with an alcohol content of about 5% abv.

2.05    Initially, as a start-up Mars Colony self-distributed its product. As the brand grew, Mars Colony entered into eight (8) distribution agreements covering Central Texas, the remainder of Texas, and several other states.

2.06    Until recently, Mars Colony handled all aspects of manufacturing and packaging our products. However, in 2021 it began strategic shift towards contract manufacturing of our product. This change in business model would then allow Mars Colony to focus its energy and efforts to growing the Meridian Hive brand.

2.07    The events leading to the bankruptcy were simple. On September 9, 2021, a prior owner of Meridian Hive, Evan Whitehead ("Whitehead") obtained a Final Judgment (the "Judgment") against Debtor and others in a lawsuit brought in the 459th District Court of Travis County styled *Evan Whitehead v. Eric Lowe, et. al.* Cause No. D-1-GN-19-001880A. The judgment awarded Whitehead actual damages of $666,750, prejudgment interest, attorney fees and expenses, and Court costs.

2.08    On or about February 11, 2022, Mr. Whitehead commenced an *Application for Writ of Garnishment* (the "Garnishment Action") in the 459th District Court of Travis County against Bank of America, N.A. as a garnishee in Cause No. D-1-GN-22-000343. As a result of the Garnishment Application, Bank of America put a hold or freeze on all of Debtor's accounts at Bank of America. Due to the hold or freeze placed on the accounts, Debtor could not use those funds or otherwise close its accounts.

2.09    Debtor has continued to manage the day-to-day operations of the business since filing the bankruptcy. As part of the bankruptcy process, Debtor hired Cloudbooks to assist with

reconciling the finances as well as hiring Terrazas, PLLC as special counsel to represent the Debtor and others in the Appeal with Whitehead.

2.10 Meanwhile, Debtor has completed the shift in operational models with a local brewer managing to take over the production of the mead, which has resulted in a reduction in overhead and improved efficiencies. Due to the change of operations, Debtor needed additional time to update and review the financials to put together a pro-forma budget to support a plan of reorganization as an operating business. Debtor hopes to take advantage of the improved efficiencies and to moderately improve sales over the next few years, with a focus upon the local market.

## Article 3
## Plan Summary

3.01 This Plan proposes to pay the Debtor's creditors from future income. This Plan provides for:

2 Classes of Secured claims;

1 Class of Priority claims;

2 Class of General Unsecured claims; and,

1 Class of Equity security holders.

3.02 General unsecured creditors holding allowed claims will receive distributions. The Plan proposes to pay the general unsecured creditors a pro-rata share of $63,000 over three years. This Plan also provides for the payment of Administrative Expense Claims and priority claims.

**All creditors and equity security holders should refer to Articles 6 through 7 of this Plan for information regarding the precise treatment of their claim. Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.)**

## Article 4
## Means of Implementation and Ability to Make Plan Payments

**4.01 Continued Operations**. The Debtor, as a reorganized debtor, will retain all property of the Estate. The retained property shall be used and employed by the Debtor in the

continuance of its winery. The operating Debtor shall fund the Plan payments to Creditors from disposable income derived from future business operations. Based upon the projection of profits from Debtor's business operations, the Debtor will have sufficient funds to use for payments to Creditors after Confirmation of the Debtor's plan. W. Cayce Rivers shall continue serving as the managing member of Mars Colony.

**4.02 Debtor's Financial Projections.** A detailed analysis of the Debtor's projected income and expenses is set forth on the Projected Proforma attached as **Exhibit A**. The Debtor's financial projections show that the Debtor will have sufficient projected disposable income (as defined by § 1191(d) of the Bankruptcy Code) for the duration described in § 1191(c)(2).

The Debtor believe that the Plan is feasible based upon the projected revenue of the Debtor's business and the financial condition of the Debtor. The financial projections for the Debtor represent management's best estimation of the anticipated results of future operations based upon management's experience in the industry and its familiarity with the local market due to having operated the Debtor multiple years now. Notwithstanding, there can be no assurance or guaranty that such projections will be realized or achieved, and any reliance upon such financial projections must be qualified.

**4.03 Advance Payment of Claims.** Debtor may, in its own business judgment, make advance payments on Allowed Claims and must stay current on payments to all creditors under the plan.

**4.04 Consensual post-confirmation modification of plan terms**. Notwithstanding any provision set forth in this Plan, the Debtor and any particular Creditor provided for in this Plan may enter into any agreement(s) after confirmation which modifies that Creditor's treatment and payment terms, so long as such agreement is reduced to writing and signed by the Debtor's and consenting Creditor's authorized representatives. In such event, any modified agreement shall be deemed to supersede the terms of this Plan.

**Article 5**
**Liquidation Analysis**

**5.01** The Court must find that all creditors and equity interest holders will receive at least as much under the Plan as they would receive in a chapter 7 liquidation process. Debtor's liquidation analysis is attached to the Plan as **Exhibit B**. The liquidation analysis assumes

conversion of the Debtor's Chapter 11 case to a chapter 7 liquidation case on July 8, 2022, wherein it is assumed that the United States Trustee would appoint a chapter 7 trustee to liquidate the Estates.

5.02 The liquidation analysis assumes the value that a chapter 7 trustee would obtain for the property of the Debtor in a hypothetical liquidation and reflects the Debtor's estimates on the potential recoveries for the different categories of property. The administrative expenses assumed therein consist of claims entitled to administrative expense priority under section 503 of the Bankruptcy Code, including the chapter 7 trustee's statutory fees and professional expenses in liquidating the estate.

5.03 Further, Debtor's true value is as a going-concern business. The Debtor believes that liquidation under Chapter 7 would result in lower distributions to the Debtor's secured and priority claimants and no distribution to the unsecured creditors. Some of the Debtor's secured creditors would have the right to exercise their rights as a secured creditor to repossess and foreclose upon the Debtor's assets, and such creditors could hold significant deficiency claims upon any such repossession or foreclosure. With respect to any remaining assets, and if a receiver or trustee were appointed to supervise the liquidation of the Debtor's assets, there would be significant costs associated with such liquidation. It is unlikely that the liquidation of Debtor's assets would be sufficient to enable a hypothetical trustee to make any significant distribution to unsecured creditors or deficiency claims of secured creditors because Administrative and Priority Claims, Secured Tax Claims, and the Secured Claims of the Debtor's equipment lenders would consume a significant portion, if not all, of such proceeds.

## Article 6

**Treatment of Administrative Expense Claims, Priority Tax Claims, and Statutory Fees**

Classification- Claims and Equity Interests are classified and treated as follows:

**6.01 Administrative Expense Claims**

Administrative Expense Claims consist of expenses incurred during the chapter 11 case, which are approved by the Bankruptcy Court and expenses incurred in operating the Debtor's business. Most Administrative Expense Claims consist of claims by professionals employed by the Debtor in the Bankruptcy Case, which must be approved by the Bankruptcy Court. Other Administrative Expense Claims are claims arising post-petition which may have not been paid.

The Debtor has paid and intend to continue to pay normal post-petition operating expenses as they become due in the ordinary course of business. Debtor is aware of the following Administrative Claims:

| Subchapter V Trustee- Brad Odell | Est. $5,000 |
|---|---|
| Hayward PLLC | Est. $35,000 as of July 8, 2022. Retainer of $0. Estimated total fees of $45,000. |
| Cloudbooks, LLC (Bookkeeper) | Current- Paid as Ordinary Course Professional |
| Terrazas, PLLC (Special Counsel) | Current- Paid as Ordinary Course Professional |

No Administrative Expense Claims (other than for the U.S. Trustee fees) shall be allowed except pursuant to Court order. Any application for allowance of an administrative expense claim shall be filed within 60 days after the Effective Date or shall be barred.

The Administrative Expenses of the Debtor's Chapter 11 case allowed pursuant to §503(b) of the Code and given priority pursuant to §507(a)(1) of the code have been or shall be paid the full amount of their court-allowed fees from either: a) the ongoing operations of the Debtor pursuant to entered orders for the Ordinary Course Professionals; b) the security deposits paid by the Debtor to the Subchapter V trustee from ongoing operations, or c) in the case of Debtor's Counsel from monthly distributions by the Reorganized Debtor according to the Plan Payment Projections. All Administrative Expense Claims will be paid only upon entry of an order from the Bankruptcy Court.

6.02 **Priority or Secured Tax Claims**. Each holder of an Allowed Secured and Priority Claims of Taxing Authorities will be paid in accordance with the treatment accorded to Claims in Class 1 in this Plan

**6.03 Statutory Fees.** All fees required to be paid under 28 U.S.C. § 1930 that are owed on or before the effective date of this Plan have been paid or will be paid on the effective date.

## Article 7

### Treatment of Claims and Interests Under the Plan

The following classes of claims are based upon the proofs of claims filed against the Debtor and claims included in the filed schedules. Debtor has attached a proposed Plan Payment Schedule, attached as **Exhibit C**.

7.01    **Class 1- Priority Claim of IRS**. The Allowed Priority Claim of the IRS in the amount of $4,581.11 shall be paid in full in monthly installments as set forth in the Plan Payment Schedule attached as Exhibit C.

Class 1 is impaired by this Plan.

7.02    **Class 2- Secured Claim of Kevin Lysaght**. Of the scheduled Secured Claims of Kevin Lysaght, Debtor will pay $23,092 to Mr. Lysaght through the Plan in monthly installments and without interest.[2] Payments will commence in month 1 of the Plan at $800 per month and will conclude with a final payment of $692 in month 29, as set forth in the Plan Payment Schedule attached as Exhibit C.

Class 2 is impaired by this Plan.

7.03    **Class 3- Secured Claim of Travis County.** With respect to all Allowed Secured or Priority Claims of a Taxing Authority, such claims shall be paid in accordance with 11 U.S.C. § 1129(a)(9)(c) with the first payment due and payable on October 1, 2022. The Reorganized Debtor, in its sole discretion, will either pay such Claims: (i) on the Effective Date; or (ii) when such taxes become due and payable under the laws of the applicable taxing jurisdiction; or (iii) in accordance with the Plan Payment Schedule attached as Exhibit C.

All Tax Claims shall remain subject to section 505 of the Bankruptcy Code. The Reorganized Debtor shall retain the right to a determination of the amount or legality of any tax pursuant to section 505 of the Bankruptcy Code as to any Tax Claim. The Reorganized Debtor may seek relief pursuant to section 505 of the Bankruptcy Code as a part of, and in conjunction with, any objection to any Tax Claim.

With respect to Allowed Secured or Priority Tax Claims, the interest rate paid upon such Claims shall be the rate of interest determined under applicable non-bankruptcy law.

---

2 Debtor will, pursuant to the Plan, assume the loan for the Cross-Flow Filter and the Kegs. Accordingly, Debotr will continue making the monthly installments on those loans as reflected in the proposed budget.

Post-petition property taxes will be paid when such taxes become due and payable under the laws of the applicable taxing jurisdiction.

A failure by the Reorganized Debtor to make a payment to a Taxing Authority holding a Priority or Secured Tax Claim pursuant to the terms of the Plan shall be an Event of Default. If the Reorganized Debtor fail to cure an Event of Default as to such payments within ten (10) days after receipt of written notice of default from the holder of a Class 3 Claim, then such holder may exercise any and all rights and remedies the holder of such Class 3 Claim may have under applicable law.

Nothing herein shall prohibit the Reorganized Debtor from selling property secured by a Tax Claim at any time provided that the remaining unpaid portion of the Allowed Secured Claim of a Taxing Authority holding an interest in the property and attributable to such property shall be paid in full at such time.

Class 3 is Impaired.

**7.04 Class 4- General Unsecured Claim of Apiarios San Martin**. Debtor will be seeking, concurrent with the Plan of Reorganization, authority to treat the scheduled claim of Apiarios San Martin as a critical vendor due to the inability of the Debtor to replace this honey vendor and maintain a viable business. As such, Debtor will propose to make certain payments to Apiaros San Martin, in accordance with the terms of any order entered by the Court. Debtor scheduled the unsecured claim of Apiarios San Martin at $47,338 and intends to make one final payment to the Critical Vendor in January 2023. Debtor shall make one plan payment to Class 4 in accordance with the Plan Payment Schedule attached as Exhibit C.

Class 4 is Impaired.

**7.05 Class 5 – General Unsecured Creditors.** Allowed General Unsecured Claims, including deficiency claims, shall receive a pro-rata share of $63,014 which amount shall be paid in monthly payments beginning in Month 1 and ending in Month 36 according to the projections listed in the Plan Payment Schedule attached as Exhibit C.

Debtor is in the process of appealing the judgment in favor of Mr. Evan Whitehead. While the Appeal is proceeding, Debtor will make payments to the allowed General Unsecured Creditors claims and escrow funds (the "Escrowed Funds") that would be paid to Mr. Whitehead as if his claim were allowed. Depending upon the outcome of the Appeal, the Escrowed Funds will be: i)

disbursed for the claimant's benefit in full; ii) disbursed to Whitehead based upon a newly allowed claim amount; or, iii) disbursed to the holders of allowed Class 5 claims if the judgment is voided.

Class 5 is Impaired.

**7.06 Class 6- Allowed Equity Interests in the Debtor**

The equity interest holders in Mars Colony, LLC will retain their interests in the Reorganized Debtor.

## Article 8
## Allowance and Disallowance of Claims

**8.01  Delay of distribution on a Contested Claim**. No distribution will be made on account of a Contested Claim unless such claim is allowed by a Final Order.

**8.02  Settlement of Contested Claims**. The Debtor will have the power and authority to settle and compromise a Contested Claim with court approval and compliance with Rule 9019 of the Federal Rules of Procedure.

**8.03  Filing Objections**. Objections to Claims may be filed with the Bankruptcy Court and served upon each holder of the Claims to which objections are filed not later than sixty (60) days after the Confirmation Date, unless such time period is extended by order of the Court. Subject to the provision in 7.05 above, no distribution will be made on account of a Contested Claim unless and until such claim is allowed.

## Article 9
## Executory Contracts and Unexpired Leases

**9.01**  All executory contracts or unexpired leases, not otherwise assumed or rejected by the Debtor prior to confirmation of the Plan, are assumed by the Debtor under the Plan as of the Effective Date, except as otherwise provided under Treatment of Claims in the Plan. Without limitation, Debtor hereby identifies the following unexpired leases or executory contracts as assumed:

I)-   Operation Agreement with Thirsty Planet

II)-  Any Distribution Agreement

**9.02** A proof of a claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than 45 days after the date of the order confirming this Plan.

### Article 10
### General Provisions

**10.01 Severability**. If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

**10.02 Binding Effect**. Pursuant to 11 U.S.C. § 1141, the provisions of the confirmed Plan shall bind the Reorganized Debtor, the Debtor's Creditors, and the holder of the Equity Interest in the Debtor, whether or not the Claim or Equity Interest is impaired under the Plan and whether or not such Creditor or Equity Interest holder has accepted the Plan.

**10.03 Permanent Injunction**. Confirmation of the Plan shall result in the issuance of a permanent injunction against the commencement or continuation of any judicial, administrative, or other action or proceeding on account of any Claims against the Reorganized Debtor. From and after Confirmation, all holders of Claims against the Debtor are permanently restrained and enjoined (a) from commencing or continuing in any manner, any action or other proceeding of any kind with respect to any such Claim against the Debtor or the Reorganized Debtor or their assets; (b) from enforcing, attaching, collecting, or recovering by any manner or means, any judgment, award, decree, or order against the Debtor or the Reorganized Debtor or their assets; (c) from creating, perfecting, or enforcing any encumbrance or any kind against the Debtor or the Reorganized Debtor or their assets; (d) from asserting any setoff, right of subrogation, or recoupment of any kind against any obligation due to the Debtor or the Reorganized Debtor except as may be allowed under the Bankruptcy Code; and (e) from performing any act, in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan; *provided, however*, that each holder of a Contested Claim may continue to prosecute its proof of claim in the Bankruptcy Court and all holders of Claims shall be entitled to enforce their rights under the Plan and any agreements executed or delivered pursuant to or in connection with the Plan.

**10.05 Captions**. The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

**10.06 Controlling effect**. Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of Texas govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

**10.07 Retention of Jurisdiction**. Until the Bankruptcy Case is closed, the Bankruptcy Court shall retain jurisdiction to hear and determine all Claims against the Debtor arising prior to the Confirmation Date, to hear and determine all causes of action that exist in favor of the Debtor that arise prior to the Confirmation Date (subject to applicable case law limiting such jurisdiction), to hear and determine all matters relating the administration of what was the Debtor's Estate, to modify the Plan, and to make such other orders as are necessary or appropriate to effectuate the provisions of the Plan in accordance with § 1142 of the Bankruptcy Code, including interpretation and implementation of the Plan and entry of a final decree.

**10.08 Vesting**. On the Effective Date, title to all assets and properties dealt with by the Plan shall vest in Reorganized Debtor, free and clear of all Claims and Interests other than any contractual secured claims granted under any lending agreement, on the condition that Reorganized Debtor complies with the terms of the Plan, including the making of all payments to creditors provided for in such Plan. If Reorganized Debtor defaults in performing under the provisions of this Plan and this case is converted to a case under chapter 7, all property vested in Reorganized Debtor and all subsequently acquired property owned as of or after the conversion date shall re-vest and constitute property of the bankruptcy estate in the converted case.

**10.09 Headings**. The headings and captions used in the Plan are for convenience only and shall not be deemed to limit, amplify or modify the terms of this Plan nor affect the meaning thereof.

**10.10 Computation of Time**. In computing any time prescribed herein the provision of Fed. R. Bankr. P. 9006(a) shall apply.

# Article 11
## Discharge

**11.01 Discharge.** If the Court confirms Debtor's Plan without objection, the Debtor will be discharged from pre-petition debts under § 1191(a), on the effective date of the Plan, to the extent specified in § 1141(d)(1)(A) of the Code, except that the Debtor will not be discharged of any debt:

(i) imposed by this Plan; or (ii) to the extent provided in § 1141(d)(6).

If the Court confirms Debtor's Plan over a creditor's objection under § 1191(b), confirmation of this Plan does not discharge any debt provided for in this Plan until the court grants a discharge on completion of all payments due within the first 3 years of this Plan, or as otherwise provided in § 1192 of the Code. Confirmation of the Plan will not discharge the Debtor from any debt: (i) on which the last payment is due after the first 3 years of the plan, or as otherwise provided in § 1192; or (ii) excepted from discharge under § 523(a) of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

In the event that the plan is confirmed under § 1191(b), the Subchapter V trustee <u>will not</u> serve as a payment agent to the creditors under the Plan; Debtor will disburse payments according to Exhibit C.

## Article 12
## Default

**12.01 Default in Plan Payments**. If the Debtor fails to make a payment to a creditor pursuant to the terms of the Plan by the fifteenth day of the applicable month then such a failure shall constitute an event of default. If there is an event of default, a Creditor must deliver to the Debtor a notice of default. Upon receipt of the notice of default, the Debtor shall have 14 days to cure such default. A Creditor may, upon the occurrence of a third event of default and after three such notices of default, whether such defaults are cured or uncured, accelerate its Allowed Claim(s) and declare the outstanding amount of such Claim(s) to be immediately due and owing and pursue any and all available state and federal rights and remedies.

**12.02 Conversion to Chapter 7**. Conversion of the Bankruptcy Cases to Chapter 7 shall be an additional remedy for default.

**12.03 Default to the IRS**. Notwithstanding any other provision herein, the debt owed by the Debtor to the Internal Revenue Service is a non-dischargeable debt, except as otherwise provided for in the Bankruptcy Code, and that if the Debtor should default, the Internal Revenue Service is not subject to the provisions of the Bankruptcy Code so that the Internal Revenue Service can take whatever actions are necessary to collect said debt in the event of default.

A failure by the Debtor to make a payment to the Internal Revenue Service pursuant to the terms of the Plan shall be an event of default, and as to the Internal Revenue Service, there is an event

of default if payment is not received by the fifteenth (15th) day of each month. If there is a default, the Internal Revenue Service must send a written demand for payment, and said payment must be received by the Internal Revenue Service within fifteen (15) days of the date of the demand letter. The Debtor can receive up to three (3) notices of default from the Internal Revenue Service; however, on the third (3rd) notice of default from the Internal Revenue Service, the third (3rd) notice of default cannot be cured, and the Internal Revenue Service may accelerate its allowed claim(s), past and future, and declare the outstanding amount of such claim(s) to be immediately due and owing and pursue any and all available state and federal rights and remedies. These default provisions pertain to the entire claim(s) of the Internal Revenue Service, secured, unsecured priority, unsecured general and administrative priority.

The Internal Revenue Service is bound by the provisions of the confirmed Plan and is barred under Section 1141 of the Bankruptcy Code from taking any collection actions against the Debtor for pre-petition claims during the duration of the Plan (provided there is no default as to the Internal Revenue Service). The period of limitations on collection remains suspended under 26 U.S.C. § 6503(h) for the tax periods being paid under the Plan and terminates on the earlier of (1) all required payments to the Internal Revenue Service have been made; or (2) thirty (30) days after the date of the demand letter (described above) for which the debtor failed to cure the default.

The Debtor's failure to remain current on its ongoing tax obligations shall be an event of default under the terms of the Plan. The Debtor is required to stay current on all ongoing tax reporting/tax payments with the Internal Revenue Service. If the debtor defaults to the Internal Revenue Service (in the timely filing of any future tax return and/or the payment of any ongoing tax liability) this is an event of default to the plan term agreement. The Internal Revenue Service must send a written demand to the Debtor or Reorganized Debtor of the default and the Debtor must cure the default within fifteen (15) days of the date on the demand letter. If the default is not cured within fifteen (15) days, the Internal Revenue Service may assert the balance on the proof of claim still remaining which will include tax, interest and penalty to be due and owing and the entire balance (after crediting all payments made) may go out for collection.

Internal Revenue Service remedies upon default: Upon any final and non-curable default by the Reorganized Debtor, the Internal Revenue Service may accelerate its allowed pre- and post-petition claims (and any future administrative claims), and declare the outstanding amounts of such claims to be immediately due and owing. The Internal Revenue Service may pursue any and all available state and federal rights and remedies as provided by law without further order of this Court.

**12.04 Ad Valorem Taxes to Travis County**. The Debtor is required to stay current on all ongoing tax payments with Travis County. If a Debtor defaults to Travis County (in the timely payment of any ongoing tax liability) this is an event of default to the Plan. Travis County may send a written demand to the Debtor or Reorganized Debtor of the default and the Debtor must cure the default within fifteen (15) days of the date of the demand letter. If the default is not cured within fifteen (15) days, Travis County may assert the balance on the proof of claim still remaining.

Date: July 8, 2022

                    Respectfully submitted,

                    Mars Colony, LLC

                    By: */s/ Cayce Rivers*
                    W. Cayce Rivers
                    Managing Member

                    DRAFTED AND APPROVED:

                    */s/ Todd Headden*
                    Todd Headden
                    Bar Number: 24096285
                    Hayward PLLC
                    901 MoPac Expressway South
                    Building 1, Suite 300
                    Austin, TX 78746
                    (737) 881-7100
                    theadden@haywardfirm.com

                    **COUNSEL FOR MARS COLONY LLC**